# Moritz v. Horace Mann Property & Casualty Insurance Co.

C.P. of Lackawanna County, No. 13 CV 544

*John M. Mulcahey*, for plaintiffs.
*Richard Polacheck*, for defendant.

NEALON, *J.*, Nov. 10, 2014—

## ORDER

Plaintiffs, Cynthia Moritz ("Moritz"), and her husband, George Moritz, have filed this action seeking to recover underinsured motorist (UIM) benefits from their insurer, Horace Mann Property & Casualty Insurance Company ("Horace Mann"), as a result of an automobile accident on August 26, 2010, in which Moritz was injured. The accident occurred when a vehicle operated by Cynthia Parlanti crossed into Moritz's lane of travel an collided with her automobile. (Joint pre-trial order, filed as docket entry no. 39, at p. 2). The parties agree that Ms. Parlanti was solely responsible for the accident, and the only issue to be decided by the jury is the amount of damages recoverable by Moritz and her husband. (*Id.* at pp. 2-3).

Moritz's insurance policy with Horace Mann affords UIM coverage, and obligates Horace Mann to "pay damages which [Moritz] is legally entitled to recover from the owner or operator of...an underinsured motor vehicle... because of bodily injury: (1) sustained by [Moritz]; and (2) caused by an accident." (Docket entry no. 46, Exhibit A at p. 29). An "underinsured motor vehicle" is defined by the policy as any vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but its limits for bodily injury liability is (*sic*) not enough to pay the full amount the insured is legally entitled to recover as damages." (*Id.* at p. 30). Under the UIM coverage provisions, Horace Mann agrees to "pay damages under this coverage arising out of an accident with an underinsured motor vehicle only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." (*Id.*). The parties have stipulated that Cynthia Parlanti's liability insurer, Nationwide Insurance Company, has tendered its policy limits of $15,000.00 to Moritz in settlement of her liability claim. (Docket entry no. 39 at pp. 2-3). Horace Mann's policy states that any damages which Moritz "is legally entitled to recover" pursuant to her UIM coverage "shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." (Docket entry no. 46 at p. 31). Thus, any verdict that Moritz secures in this UIM matter will be reduced by the $15,000.00 payment that Moritz received from the tortfeasor's insurer.

In anticipation of the jury trial scheduled to commence on November 12, 2014, the parties filed motions in

limine on November 7, 2014, with respect to Horace Mann's payment of first party medical expense benefits for treatment that Moritz received following the accident. (Docket entry nos. 47,49-51). Additionally, on November 5, 2014, Horace Mann filed objections to Moritz's proposed voir dire inquiries which reference underinsured motorist coverage and the circumstances giving rise to Moritz's UIM claim against Horace Mann. (Docket entry no. 43 at ¶¶17-21). The parties have requested rulings on these two issues prior to trial.

Reference to Underinsured Motorist Coverage

In her pre-trial submissions, Moritz has indicated her intention to advise the jury that Horace Mann issued a policy to Moritz which affords UIM coverage, that Moritz collected the negligent motorist's liability insurance policy limits, and that Moritz is seeking to recover damages pursuant to the above-quoted provisions of Moritz's UIM coverage. Horace Mann posits that the jury should merely be informed that this case involves an automobile accident between Moritz and Cynthia Parlanti, that liability for the accident is not in dispute, that the parties contest the nature and extent of the injuries caused by the accident, and that the only issues to be decided by the jury are the damages recoverable by Moritz and her husband. (Docket entry no. 50, Exhibit B at p. 1). The gist of Horace Mann's argument is that any reference to or explanation of UIM insurance is irrelevant and unduly prejudicial. (*Id.*; Docket entry no. 43 at ¶¶17-21).

Prior to 2005, jury trials were not conducted in claims for uninsured motorist (UM) or underinsured motorist (UIM) benefits since those disputes were subject to binding

arbitration due to Pennsylvania Insurance Department regulations mandating insurance policy language requiring arbitration of UM/UIM claims. *See* Ronca & Sloane, Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law at pp. 6-14 to 6-20 (3d ed. 2013). In *Insurance Federation of Pennsylvania, Inc. v. Koken*, 585 Pa. 630, 889 A.2d 550 (2005), the Supreme Court of Pennsylvania overruled *Prudential Property and Casualty Insurance Company v. Muir*, 99 Pa. Cmwlth. 620, 513 A.2d 1129 (1986), and held that the Insurance Department does not have the express or implied authority to require binding arbitration of UM/UIM claims. *Koken* 585 Pa. at 637-638, 889 A.2d at 555. "In the wake of *Koken*, insurance policies now make arbitration of UM/UIM disputes optional or conditioned upon the insurer's consent, as a result of which UM/UIM claims are being litigated in court proceedings." *Bingham v. Poswistilo*, 24 Pa. D. & C.5th 17, 24 (Lacka. Co. 2011).

Section III, p. 11 of Moritz's insurance policy with Horace Mann provides for arbitration "in accordance with the provisions of the Pennsylvania Uniform Arbitration Act" if Moritz and Horace Mann cannot agree "as to the amount of damages" recoverable under the UIM coverage. (Docket entry no. 46, Exhibit A at p. 31). However, Horace Mann's "Uninsured/Underinsured Motor Vehicle amendatory endorsement CC-N04PA1 (10/06)" accompanying Moritz's policy expressly states that "[t]he Arbitration section has been deleted" from Moritz's UIM coverage. (*Id.* at p. 17). As a consequence, Moritz's UIM claim is not subject to arbitration, and pursuant to that amendatory endorsement, Moritz filed the instant civil action to collect UIM benefits.

Although Pennsylvania Rule of Evidence 411 generally provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully," it further states that "the court may admit this evidence for another purpose...." Pa.R.E. 411. Since reference to insurance in the context of a UM/UIM benefits trial does not inject evidence of liability or indemnity insurance in contravention of Rule 411, we reasoned in *Bingham* that "Pennsylvania trial courts may join and try tort and UIM claims in a single action without running afoul of Pa.R.E. 411," and that "the trial court may consider evidence of insurance as being' offered for another purpose' under Rule 411 and allow the UIM insurer to be identified, and the tort and UIM issues to be decided jointly, based upon carefully crafted instructions to the jury." *Bingham*, 24 Pa. D. & C.5th at 44. Two years later, the Superior Court of Pennsylvania definitively addressed the application of Pa. R.E. 411 in a jury trial where liability and UIM claims are joined for a single trial, and held that "a course of action identifying [the UIM insurer] as a party would not necessarily run afoul of...Rule 411" in such a trial. *Stepanovich v. McGraw*, 78 A.3d 1147, 1150 (Pa. Super. 2013), *app. denied*, 89 A.3d 1286 (Pa. 2014).

Reference to insurance was a non-issue in UM/UIM proceedings when those disputes were subject to mandatory arbitration and decided by a panel of lawyers who were aware of the existence of UM/UIM coverage. *See, e.g., Hartford Ins. Co. v. O'Mara*, 907 A.2d 589, 591 (Pa. Super. 2006) (arbitration panel found that insured's signature on coverage option forms did not constitute proper written request for reduction of UM/UIM coverage under 75 Pa.

C.S.A. § 1734, reformed the UM/UIM policy to afford higher stacked coverage limits, and awarded damages to claimant), *app. denied*, 591 Pa. 727, 920 A.2d 833 (2007). However, "[t]he insurance industry's successful challenge of mandatory UM/UIM arbitration clauses in *Koken* has created the prospect of...UIM actions and the resultant relevance of insurance evidence." *Bingham*, 24 Pa. D. & C.5th at 39 (citing 17 Couch on Insurance § 246:36 (3rd ed.) ("It is also the case that where joinder of the insurance carrier is permitted under state law, reference to the insurance carrier is not regarded as prejudicial.")). A recognized automobile insurance treatise has stated that following *Koken*, "a 'Pandora's box' of legal issues has been opened," including "how will the parties be identified," "how much explanation can be given to a jury regarding the proceeding and the parties involved," and "can 'insurance'...or 'underinsured' be mentioned." Ronca & Sloane, Pennsylvania Motor Vehicle Insurance, *supra*, at p. 6-15.

The Civil Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions has not published any recommended instructions for UM/UIM jury trials after *Koken*, nor have the appellate courts had occasion to consider the propriety of specific instructions that have been fashioned and used by trial courts in such cases. *See, e.g.*, Alabama Pattern Jury Instructions — Civil § 20.53 (3rd. ed. 2012); Connecticut Civil Jury Instruction § 3.7 — 14 (4th ed. 2008); Delaware Civil Pattern Jury Instruction § 17.4 (2000); Iowa Civil Jury Instruction No. 1440.1 (2012); Maryland Civil Pattern Jury Instruction 18:11 (4th ed.). Some states have adopted the approach

currently being advocated by Horace Mann, and have barred plaintiffs from identifying the UIM insurer as the defendant or introducing evidence of the UIM coverage provisions. *See Bardis v. First Trenton Ins. Co.*, 199 N.J. 265, 277, 971 A.2d 1062, 1069 (N.J. 2009) ("[W]e reject the request for a rule compelling the insurer in an UIM trial to be identified as the defendant, and we disagree with the [intermediate appellate court] panel's suggestion that such a rule would be preferable," as "we are persuaded that the insurer's identity is ordinarily irrelevant."); *Gibson v. Geico General Ins. Co.*, 153 P.3d 312, 318 (Alaska 2007) (trial court did not abuse its discretion in refusing to advise jury about auto insurer's status as the UIM carrier and the nature of UIM claim); *Morton v. Horace Mann Ins. Co.*, 282 Ga. App. 734, 738, 639 S.E.2d 352, 357 (2006) (prohibiting insureds "from mentioning their insurance contract with Horace Mann" in UIM trial, and "omitting the word 'Insurance' from Horace Mann's name, instead referring to the company as 'the Horace Mann companies.'"). Other jurisdictions have concluded that their version of Rule 411 does not preclude the correct identification of the UM/UIM carrier as a party, or the admission of evidence pertaining to the applicability of the UM/UIM policy provisions. *See Earle v. Cobb*, 156 S.W.3d 257, 258-259, 262 (Ky. 2004) (UIM carrier should have been identified to jury "because it was named as a party by virtue of its contract" with plaintiff, K.R.E. 411 did not prevent such identification, and trial was "fundamentally misleading to the jury and it deprive[d] a plaintiff of the right to try her case against the party she chooses."); *State ex rel. Gadbaw v. Montana Eight Jud. Dist. Ct.*, 316 Mont. 25, 32, 75 P.3d 1238, 1242 (Mont. 2003) (holding that it

was "clear that Rule 411, Mont. R. Evid., does not prohibit the introduction of [tortfeasor's] liability coverage or the fact that [plaintiffs] have underinsured motorist coverage, and that [UIM carrier] has an obligation to pay [plaintiffs] pursuant to that coverage in the event their damages exceed the amount of [tortfeasor's] liability coverage."); *Lamz v. Geico General Ins. Co.*, 803 So. 2d 593, 595 (Fla. 2001) (UIM insurer must be identified since "full disclosure of the identity of the parties protects the integrity of the jury system and prevents charades at trial," and the "failure to specifically identify the underinsured carrier as such leaves the jury to speculate about the exact role of the plaintiffs carrier in the lawsuit, perpetuating the 'charades in trials' denounced by this court in *Dosdourian*."); *Boone v. American Manufacturers Mutual Insurance Company*, 150 Md. App. 201, 231-233, 819 A.2d 1099, 1116-1117 (Md. App. 2003) (trial court committed reversible error in UIM trial by failing to instruct jurors that amount which plaintiffs already received from liability insurer would be deducted by the court from any jury award of damages), *cert. denied*, 376 Md. 50, 827 A.2d 112 (2003).

Following *Stepanovich*, the UIM insurer may be identified as the party defendant without violating the proscription in Pa.R.E. 411 against the introduction of liability or indemnity insurance for the purpose of proving that a person acted negligently or wrongfully. With regard to specific jury instructions, "a trial court has wide latitude in its choice of language when charging a jury," and should "explain the principles of law which are fairly raised under the facts of a particular case so as to enable the jury to comprehend the questions it must decide." *Drew v. Work*, 95 A.3d 324, 329 (Pa. Super. 2014) (quoting *Lockhart v.*

*List*, 542 Pa. 141, 148, 665 A.2d 1176, 1179(1995)). "A jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations." *Estate of Hicks v. Dana Companies. LLC*, 984 A.2d 943, 972 (Pa. Super. 2009) (*en banc*), 610 Pa. 586, 19 A.3d 1051 (2011).

Moritz has confirmed in her pre-trial submissions that she does not seek to introduce evidence of Horace Mann's UIM coverage limits or the amount of the tortfeasor's liability insurance limits which she has already collected. Horace Mann contends that the jury should merely be advised "that this matter involves a motor vehicle accident involving 2 drivers, identifying the drivers, and also advising the jury that liability is not in dispute, but the extent of injuries being claimed by plaintiffs are in dispute and the only issue for the jury to decide is what injuries, if any, plaintiff, Cynthia Moritz, sustained as a result of the motor vehicle accident and what are the plaintiffs' damages." (Docket entry no. 50, Exhibit B at p. 1; docket entry no. 52 at p. 1). One common pleas court has furnished such an instruction in a UIM trial, and has simply informed the jury that "[a]ll that is necessary for you to know is that [plaintiff] has a claim for damages as a result of this accident" and that "[y]our duty will be to determine whether his claim is valid and, if so, how much in money damages he is entitled to receive." *Pelc v. Burkell, et al.*, 30 Crawford Co. L. J. 64, 71 (Crawford Co. 2013).

If the jury is not apprised of the reasons for Horace Mann being named as the only defendant in this case, some jurors may speculate as to why the admittedly negligent motorist, Cynthia Parlanti, is not named as a defendant or identified on the verdict slip. An insufficient explanation

of the applicable UIM principles which are raised by the facts could cause other jurors to surmise that Moritz has already been fully compensated by the tortfeasor, or that any verdict in this matter may result in some form of a double recovery for Moritz. In order to avoid such potential juror confusion, the better approach is to properly inform the jurors of the relevant legal considerations in a manner comparable to the standard civil jury instructions that are utilized in Alabama, Connecticut, Delaware, Iowa and Maryland.

Consequently, the jury in this case will be instructed that: (1) plaintiffs have brought this action against their own insurance company under coverage known as underinsured motorist coverage, which serves to provide compensation to a plaintiff for damages that would have been recoverable if the underinsured motorist had maintained an insurance policy which adequately covered the plaintiffs damages from an accident; (2) to recover against the defendant, the plaintiffs must prove that the other driver was negligent, that the negligence caused harm to the plaintiffs, and that the other driver did not have adequate liability insurance; (3) the defendant has stipulated that the plaintiffs' insurance policy provides underinsured motorist coverage and that the policy was in effect at the time of the accident, such that the jurors need not concern themselves with the specifics of the policy; (4) the defendant has also agreed that the other driver was negligent and caused the accident, such that the jury need only determine whether the plaintiffs suffered harm as a result of the accident and, if so, what amount of money damages will fairly and adequately compensate the plaintiffs; (5) the fact that the plaintiffs

are suing the defendant for underinsured motorist benefits suggests that the other driver had some insurance which was recovered by the plaintiffs; (6) the plaintiffs will not receive compensation twice for the same damages since any jury award of damages in this case will be reduced by any amount that the plaintiffs have already received from the other driver and her insurer; and (7) the jury should determine an amount of money damages that will fairly and adequately compensate the plaintiffs for all the physical and financial injuries they have sustained as a result of the accident, without consideration of any amount that the plaintiffs may have received from the other driver or her insurer, since any such amount will be deducted by the court from the total sum that the jury may award. The instructions to be provided to the jury in this case will include the following:

> Members of the jury, this case arises from an automobile accident that occurred on August 26, 2010, at approximately 8:54 AM on Sturges Road in Blakely Borough. At that time, the plaintiff, Cynthia Moritz, was operating her automobile when another vehicle being driving by Cynthia Parlanti crossed into Cynthia Moritz's lane of travel and collided with Cynthia Moritz's vehicle. It is undisputed that the other driver, Cynthia Parlanti, was negligent and that her negligence was the sole cause of this automobile accident. Therefore, you need not concern yourself with the question of fault in causing the accident since the parties agree that the accident was caused by Cynthia Parlanti's negligence.

> You will note that the only parties in this case are the

plaintiffs, Cynthia Moritz and her husband, George Moritz, and the defendant, Horace Mann Property & Casualty Insurance Company. The plaintiffs have brought this action against their own insurance company, Horace Mann Property & Casualty Insurance Company, under coverage which is commonly referred to as underinsured motorist coverage. The purpose of such insurance coverage is to provide compensation to a plaintiff for damages that would have been recoverable if the underinsured motorist had maintained an insurance policy which adequately covered the plaintiffs damages from a motor vehicle accident.

To recover damages from the defendant, Horace Mann Property & Casualty Insurance Company, the plaintiff must show by a fair preponderance of the evidence that the other driver was negligent, that the other driver's negligence caused injury to the plaintiffs, and that the other driver did not have adequate insurance to fairly and adequately compensate the plaintiffs for their damages caused by the accident. As I already mentioned, the plaintiffs and the defendant agree that the other driver, Cynthia Parlanti, was negligent and caused the accident, such that you need not consider or decide who was at fault in causing the accident. The parties have also stipulated that the plaintiffs' insurance policy with the defendant provides underinsured motorist coverage, and that the insurance policy was in full force and effect at the time of the accident on August 26, 2010. Therefore, you need not concern yourself with the specifics of that policy. Your only task is to determine whether the plaintiff, Cynthia Moritz, suffered injuries as a result of the accident, and,

if so, what amount of money damages will fairly and adequately compensate the plaintiffs for their losses.

The fact that the plaintiffs are suing the defendant, Horace Mann Property & Casualty Insurance Company, for underinsured motorist benefits suggests that the other driver, Cynthia Parlanti, had some insurance which was paid to the plaintiffs. If you award damages to the plaintiffs, they will not receive compensation twice for the same injuries or losses. Any award of damages in this case will be reduced by any amount that the plaintiffs have already received from the other driver or her insurance company. Thus, you should determine an amount of money damages that you believe will fairly and adequately compensate the plaintiffs for all the physical and financial injuries they have sustained as a result of the accident, without consideration of any amount that the plaintiffs may have received from another source, since any such amount will be deducted by me from the total sum that you may award in this case.

Evidence of Horace Mann's Payment of First-Party Medical Expense Benefits

Moritz asserts that she suffered neck and shoulder injuries in the accident on August 26, 2010. Specifically, she maintains that she sustained a right rotator cuff tear requiring arthroscopic surgical repair, a comparable injury to her left shoulder which makes her a candidate for future shoulder surgery, and an aggravation of pre-existing cervical degenerative disc disease. (*See* joint pre-trial order, filed as docket entry no. 39, at pp. 6-8). Horace Mann has retained Dr. Peter Feinstein who conducted a physical examination of Moritz under Pa.R.C.P. 4010,

and has opined that Moritz suffered a "cervical whiplash injury" and "right rotator cuff partial thickness to full thickness tear in the context of clearly defined pre-existing degenerative changes," but that she "has made a full and complete recovery from those injuries." (Docket entry no. 29, Exhibit A at pp. 6-7). Dr. Feinstein claims that Moritz's continuing symptomatology is related to "longstanding degenerative and arthritic issues in the areas of ongoing symptoms of which she complains," and that her accident-related injuries would have resolved within "six weeks to three months." (*Id.* at pp. 1, 6-7).

Moritz has filed a motion in limine "to introduce evidence that [Horace Mann] provided first party benefits coverage to Mrs. Moritz for the date of loss, including payment of $17,500.00 of her medical bills," which payments were "for the treatment of injuries [Horace Mann] now claims are not causally related to the August 26, 2010, automobile accident." (Docket entry no. 49 at ¶¶ 7, 11). Moritz submits that Horace Mann's payment of those medical expenses "is relevant and goes to the credibility of [Horace Mann's] argument" in this UIM case. (*Id.* at ¶ 15). Horace Mann counters in its own motion in limine that its payment of medical bills under its first party benefits coverage is inadmissible based upon the reasoning in *Pantelis v. Erie Insurance Exchange*, 890 A.2d 1063 (Pa. Super. 2006). (Docket entry no. 50 at ¶ 6).

In *Pantelis*, the plaintiff similarly argued that her insurer "should not have been allowed to dispute causation in the underinsured motorist proceeding after it paid first party benefits pursuant to its contract with [plaintiff]." *Pantelis*, 890 A.2d at 1065. On appeal, the Superior Court noted

that "[t]he statutory framework and applicable case law establishes that payment of UM/UIM claims is subject to a different analysis than payment of first party benefits." *Id.* at 1068. Hence, the *Pantelis* court "conclude[d] that the trial court correctly determined that payment of first party benefits does not preclude an insurer from later denying third party UM/UIM benefits," since "an insurer's payment of first party benefits does not, without more, constitute a binding admission of causation under either the statute or case law." *Id.* at 1067-68. Citing *Pantelis* with approval, the federal district courts in Pennsylvania have likewise held that an insurer's acceptance of its obligation to provide coverage under the first-party benefits provisions of its policy does not bar that insurer from later contesting causation for the insured's injuries in a UIM proceeding. *See Shaffer v. State Farm Mutual Automobile Insurance Co.*, 2014 WL 5325340, at *8 (M.D. Pa. 2014); *Thomer v. Allstate Insurance Company*, 790 F.Supp.2d 360, 373 (E.D. Pa. 2011); *Barry v. Ohio Casualty Group*, 2007 WL 128878, at *10 (W.D. Pa. 2007).

Moritz attempts to distinguish *Pantelis* on the ground that it is not attempting to "preclude [Horace Mann] from refuting causation," but instead "seeks to introduce evidence of such [medical expense] payments to refute the credibility of [Horace Mann's] argument that the injuries for which it provided first party benefits are not causally connected to the automobile accident." (Docket entry no. 47 at p. 5). Moritz's argument in that regard is a conceptual distinction without a difference. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material

fact." *Klein v. Aronchick*, 85 A.3d 487, 498 (Pa. Super. 2014). *Pantelis* clearly states "that payment of UM/UIM claims is subject to a different analysis than payment of first party benefits," *Pantelis*, 890 A.2d at 1068, as a result of which, any evidence of Horace Mann's payment of first-party benefits under medical expense coverage lacks the requisite probative value for admission into evidence.

Moreover, even if that evidence was arguably relevant, its probative value is outweighed by the danger of unfair prejudice since the admission of that evidence could sway the jury to render a verdict on an improper basis. *See Lykes v. Yates*, 77 A.3d 27, 33 (Pa. Super. 2013) ("'Unfair prejudice' supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially."), *app. denied*, 92 A.2d 812 (Pa. 2014). Admission of the fact that Horace Mann has paid $17,500.00 in medical expense benefits could be equally prejudicial to Horace Mann and Moritz. For example, the jurors could conceivably conclude that those medical expense payments, like the payment that Moritz has already received from Cynthia Parlanti's liability insurer, should be deducted from its award of damages and thereby reduce its verdict *sua sponte* without prompting or suggestion by the court. For all these evidentiary reasons, Horace Mann's payment of first party medical expense benefits of $17,500.00 is not admissible, and Horace Mann's second motion in limine will be granted, whereas Moritz's third motion in limine will be denied.

And now, this 10th day of November, 2014, upon consideration of defendant's objections to plaintiffs'

proposed voir dire questions (Docket entry no. 43), "Plaintiffs' motion in limine # 3 to Allow plaintiff to Introduce Evidence That the defendant Paid First Party Medical Benefits for the Injuries Sustained by the plaintiff in the August 26, 2010 Automobile Accident" (Docket entry no. 49), and "motion in limine # 2 of defendant, Horace Mann Property & Casualty Company" (Docket entry no. 50), and based upon the reasoning set forth above, it is hereby ordered and decreed that:

1. Defendant's objections to plaintiffs' proposed voir dire questions are overruled, and the jury will be furnished with explanatory legal instructions in accordance with this order;

2. Plaintiffs' motion in limine # 3 is denied and defendant's motion in limine # 2 is granted; and

3. Plaintiffs are precluded from referencing or introducing any evidence that defendant paid first-party medical expense benefits of $17,500.00 to plaintiffs.